IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 05–cv–01641–EWN

PATRICIO REYES,

     Plaintiff,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

     Defendant.

---

## ORDER AND MEMORANDUM OF DECISION

---

     This is a social security benefits appeal under 42 U.S.C. § 405(g).  Plaintiff Patricio Reyes challenges the final decision of the Commissioner of Social Security (the "Commissioner"), denying his application for disability insurance benefits.  Jurisdiction is premised upon 42 U.S.C. § 405(g) (2006).

### FACTS

*1.*    ***Medical Evidence***

     Plaintiff was born on July 14, 1945, and was fifty-seven years old at the onset of his alleged disability.  (Admin. R. at 51 [filed Nov. 7, 2005 ] [hereinafter "Admin. R."].)  Plaintiff has a high school education and has worked in the vocationally relevant past as a janitor, supply clerk,

and laborer with the United States Air Force Academy.  (*Id.* at 43, 48.)  Additionally, Plaintiff

served in the Army from 1966 through 1972, during which time he performed multiple tours of

duty in Veitnam.  (*Id.* at 215.)  Plaintiff alleges that he became unable to work beginning on

March 22, 2003, due to post-traumatic stress disorder ("PTSD"), diabetes, and hearing loss.[1]  (*Id.*

at 42, 51.)

 Plaintiff's earliest medical records reflect that Plaintiff received regular treatment for

PTSD, depression, hypertension, and diabetes beginning in 1996.  (*Id.* at 80–214.)  Veterans'

Administration ("VA") clinic treatment notes from March 24, 2000 reveal that: (1) Plaintiff's

service-connected disability rating was seventy percent; (2) Plaintiff reported his concentration

was "not very good" and his attention span short; (3) Plaintiff's medication was working "pretty

well," and his mood seemed stable; and (4) Plaintiff had been in contact with a vocational

rehabilitation representative and was considering pursuing further education.  (*Id.* at 137.)

 On June 26, 2002, Plaintiff presented to psychiatrist Walter Young, M.D. and requested a

letter recommending that he be placed in a less stressful position at work.  (*Id.* at 92.)  Dr. Young

granted Plaintiff's request and issued a letter, in which he recommended a less stressful position

because: (1) Plaintiff's severe PTSD "results in severe stress reactions in pressure situations at his

work;" and (2) Plaintiff "has difficulty with mental retention."  (*Id.* at 241.)

---

 [1]PTSD is "a syndrome occurring after a person experiences trauma outside the range of
normal human experience."  4–P *Attorneys' Dictionary of Medicine* 8552 (2005).  PTSD
symptoms include flashbacks, nightmares, severe stress with numbness to stimuli resembling the
trauma, anxiety, and depression.  *Id.*  PTSD may also trigger antisocial or suicidal behavior.  *Id.*

On July 15, 2002, Plaintiff told Dr. Young he was unable to work and requested a "letter of unemployability." (*Id.* at 91.) Dr. Young noted that Plaintiff appeared "increasingly unlikely to work" and assessed Plaintiff with a global assessment functioning ("GAF") score of forty-five.[2] (*Id.*) Dr. Young complied with Plaintiff's request and wrote a letter, stating that Plaintiff was "unemployable" and "deteriorating to the extent that he is not likely to hold down any type of employment and maintain a steady and productive work [sic]." (*Id.* at 240.) Dr. Young stated further that Plaintiff "forgets items, is overwhelmed with stress and I have advise [sic] him to discontinue work as a result of this." (*Id.*) On July 16, 2002, Plaintiff returned to Dr. Young and requested a letter permitting him to perform work "pending his filing of unemployment." (*Id.* at 89.)

On February 28, 2003, Dr. Young noted that Plaintiff was experiencing increased irritability and depression and was unsure of when he would be "finally medically retired." (*Id.* at 82.) Plaintiff's assessed GAF score remained forty-five. (*Id.*) On March 22, 2003, Plaintiff took medical retirement from his work at the Air Force Academy. (*Id.* at 253, 265.)

On May 5, 2003, Joseph Rook, Ph.D. examined Plaintiff. (*Id.* at 265–67.) Dr. Rook noted that Plaintiff visited the VA clinic for outpatient psychiatric treatment on a monthly basis. (*Id.* at 265.) Dr. Rook noted that Plaintiff slept well with his medications, and since his

---

[2]The GAF scale is a tool for rating an individual's social, occupational, and psychological functioning. A GAF score between forty-one and fifty indicates: (1) serious symptoms, such as suicidal ideation or severe obsessional rituals; or (2) a serious impairment in social, occupational, or school functioning, such as an inability to keep a job or a lack of friends. *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th Ed., Text Revision, 2000).

retirement, Plaintiff: (1) went for walks and worked in his yard; (2) helped his wife with household cleaning; (3) performed much of the grocery shopping; and (4) ate in a restaurant at least twice a week. (*Id.*) Dr. Rook noted Plaintiff intended to visit his grandchildren, and stated that on such visits he enjoyed taking the children out to shops and restaurants. (*Id.* at 266.)

Dr. Rook performed a mental status examination on Plaintiff, and determined Plaintiff: (1) showed no signs of difficulty with orientation, memory, or concentration; (2) had moderate impairment due to PTSD; (3) continued to lead a fairly active social life; and (4) appeared capable of employment. (*Id.*) Dr. Rook assessed Plaintiff with a GAF score of fifty-two.[3] (*Id.*)

On May 1, 2003, John Hill, M.D. examined Plaitniff. (*Id.* at 261–64.) Dr. Hill diagnosed Plaintiff with diabetes, hypertension, and sinusitis. (*Id.* at 264.) Dr. Hill found that "[a]s of the date of the examination, there is no medical contraindication to full employment from the standpoint of diabetes mellitus alone." (*Id.*)

On May 8, 2003, R. Terry Jones, M.D. performed a psychiatric consultative examination on Plaintiff in connection with his application for social security disability benefits. (*Id.* at 215–20.) Plaintiff reported to Dr. Jones that he began receiving treatment in the late 1980s for PTSD, which he attributed to his tours of duty in Vietnam. (*Id.* at 215.) Plaintiff reported that: (1) with medication, he did not experience any panic or anxiety episodes during the day; (2) he

---

[3]A GAF score between fifty-one and sixty indicates: (1) moderate symptoms, such as flat affect and circumstantial speech or occasional panic attacks; or (2) moderate difficulty in social, occupational, or school functioning, such as maintaining few friends or involvement in conflicts with peers or coworkers. *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th Ed., Text Revision, 2000).

experienced exaggerated startle responses to loud noises and the sounds of helicopters; and (3) he awoke two or three times per week due to nightmares. (*Id.* at 215–16.) Dr. Jones noted that the exaggerated startle responses were a "very mild" symptom and the waking episodes "[did] not appear to be interfering with [Plaintiff's] daily functioning." (*Id.*) Dr. Jones opined that Plaintiff's: (1) PTSD symptoms were "under good control" with medication; (2) concentration and memory were "very good;" (3) range of affect was normal; and (4) mental status examination was within normal limits. (*Id.*) Dr. Jones opined further that Plaintiff: (1) was capable of managing his own funds; (2) had no limitation on his ability to sit, stand, or walk; and (3) had no suicidal ideation and no psychomotor retardation. (*Id.* at 216.)

Dr. Jones assessed Plaintiff with a GAF score of seventy and concluded that Plaintiff's "disability has really not interfered with any activities in terms of chores, errands, etc., although he prefers not to be in crowded areas."[4] (*Id.* at 217.) Dr. Jones diagnosed Plaintiff with: (1) mildly symptomatic PTSD, "under good control with anti-anxiety and antidepressive medications;" (2) dependent personality disorder; and (3) adult-onset diabetes mellitus. (*Id.*)

On May 13, 2003, a state agency physician completed a form concerning Plaintiff's mental functional capacity. (*Id.* at 221–34.) The physician found that Plaintiff had mild PTSD and mild pathological dependence. (*Id.* at 221, 226, 228.) The physician found that Plaintiff experienced:

---

[4]A GAF score between sixty-one and seventy indicates that an individual is generally functioning well, with some meaningful interpersonal relationships, but also experiencing: (1) some mild symptoms, such as depressed mood or mild insomnia; or (2) some difficulty in social, occupational or school functioning. *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th Ed., Text Revision, 2000).

(1) mild restrictions on his activities of daily living; (2) moderate difficulties maintaining social functioning; (3) difficulties in maintaining concentration, persistence, or pace; and (4) one or two episodes of decompensation of extended duration. (*Id.* at 231.) The state agency physician found that Plaintiff's: (1) understanding and memory were not significantly limited; and (2) sustained concentration and persistence, abilities of adaptation, and social action were moderately limited in certain areas, but otherwise not significantly limited. (*Id.* at 235–36.) The physician opined that Plaintiff could perform work requiring up to three months to learn, and could not work closely with others, but could handle minimum contact. (*Id.* at 237.)

On September 11, 2003, the Department of Veterans' Affairs (the "Department") found that Plaintiff's service-connected disability rating remained seventy percent. (*Id.* at 75–79.) The Department based its decision on Plaintiff's application and medical record, including Dr. Young's and Dr. Rook's findings and treatment notes. (*Id.* at 76.) The Department emphasized that it considered Plaintiff capable of gainful employment because no VA examiner had identified any restrictions on Plaintiff's abilities. (*Id.* at 78.)

On September 25, 2003, Dr. Young issued a letter "to whom it may concern," in which he opined that Plaintiff was "still not employable and should receive unemployability." (*Id.* at 239.) Dr. Young stated Plaintiff's: (1) PTSD had increased and precluded Plaintiff from working; (2) PTSD medications sedate him; (3) short temper prevented him from getting along with others; and (4) panic attacks had caused him to miss significant amounts of work and had forced him to remain at home since his retirement. (*Id.*) Dr. Young opined further that Plaintiff could not

handle stress, had poor concentration skills, and slept poorly.  (*Id.*)  On June 25, 2004, Dr. Young

issued another letter, nearly identical in form, expressing the same opinions.  (*Id.* at 354.)

On January 8, 2004, Dr. Young completed a form provided by Plaintiff's counsel

regarding his opinion of Plaintiff's mental abilities.  (*Id.* at 250–52.)  Dr. Young assessed Plaintiff

with a GAF score of forty-five and opined that, in addition to various slight and moderate

limitations on Plaintiff's abilities, Plaintiff's sustained concentration and persistence were

markedly limited in certain areas, including his abilities to: (1) carry out detailed instructions; (2)

complete a normal work day and work week without interruption from psychologically-based

symptoms; and (3) perform at a consistent pace without an unreasonable number and length of

rest periods.  (*Id.* at 250, 252.)  Dr. Young opined further that Plaintiff would require ten-minute

unscheduled breaks every fifteen minutes and would not be able to complete a forty-hour work

week.  (*Id.* at 252.)

On October 18, 2004, the Department, expressly relying on Dr. Young's opinions found

that: (1) Plaintiff's disability rating was one hundred percent; and (2) Plaintiff was entitled to full

veterans' benefits.  (*Id.* at 352–53.)

**2.      *Procedural History***

On March 25, 2003, Plaintiff filed an application for disability insurance benefits.  (*Id.* at

30–32.)  On May 14, 2003, the Social Security Administration denied Plaintiff's application.  (*Id.*

at 39.)  On June 23, 2003, Plaintiff requested a hearing before an administrative law judge

("ALJ").  (*Id.* at 35.)  On January 21, 2004, the ALJ held an initial hearing, at which Plaintiff and

a vocational expert ("VE") testified.  (*Id.* at 270–86.)

Plaintiff testified that shortly before his retirement, he worked as a supply clerk. (*Id.* at 274–75.) Plaintiff explained that he received negative job performance evaluations and experienced difficulties with the supply clerk job because he: (1) was "unable to retain data;" (2) made frequent errors; and (3) often missed work. (*Id.* at 274–76, 281.) Plaintiff stated that he was transferred from his supply clerk job to a position as a laborer. (*Id.* at 274–75.) Plaintiff testified that in the laborer position, he had difficulties interacting with his coworkers. (*Id.* at 277.) Plaintiff did not testify regarding his previous work as a janitor. (*Id.*, *passim*.)

Plaintiff testified that after his March 22, 2003 retirement, he initially attempted to stay active. (*Id.* at 279.) Plaintiff testified that shortly after his retirement, he went to the grocery store, took his dog for walks, and cleaned the house. (*Id.*) Plaintiff reported that he: (1) became easily irritated in public and in crowded situations, but was able to take his grandchildren to shopping malls; (2) possessed a driver's license but refused to drive "[m]ost of the time;" and (3) did not believe he could work because he could not maintain appropriate relationships with coworkers or supervisors. (*Id.* at 280, 283.)

The VE testified at the hearing regarding her review of the vocational exhibits in Plaintiff's file. (*Id.* at 283–85.) The VE testified that Plaintiff's past work as: (1) a laborer required very heavy exertion and had a specific vocational preparation ("SVP") level of three; and (2) a supply clerk required very heavy exertion and had an SVP level of four.[5] (*Id.* at 284.) The VE opined

---

[5]SVP is "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Dikeman v. Halter*, 245 F.3d 1182, 1186 n.2 (10th Cir. 2001) (citation and internal quotation marks omitted).

that an individual: (1) similarly situated to Plaintiff in age, education, and work background; and (2) with markedly limited abilities to complete a normal work day or work week, perform at a consistent pace, and maintain attention and concentration would not be able to perform Plaintiff's prior work. (*Id.* at 284–85.)

On March 8, 2004, the ALJ issued his initial decision. (*Id.* at 9–17.) The ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act because he retained the residual functional capacity ("RFC") to perform his past relevant work as a laborer. (*Id.* at 15.) On March 26, 2004, Plaintiff requested a review of the ALJ's decision. (*Id.* at 4.) On June 1, 2004, the Appeals Council affirmed the ALJ's decision, making it the final administrative decision for the purposes of judicial review. (*Id.* at 1–3.) Plaintiff subsequently filed a complaint in this court. On December 22, 2004, Defendant filed an unopposed motion for remand of the case, noting her intention to solicit further development of the record. (*Id.* at 309–11.) On January 4, 2005, this court granted Defendant's motion. (*Id.* at 306–08.) On February 7, 2005, the Appeals Council vacated the March 8, 2004 order and remanded the case with instructions to "evaluate Plaintiff's past relevant work to determine the specific physical and mental demands of each job" and reconcile those demands with Plaintiff's RFC. (*Id.* at 313–16.)       On April 13, 2005, the ALJ held a second hearing, at which a VE testified regarding his review of the vocational exhibits in the record regarding Plaintiff's past work. (*Id.* at 379–86.) The VE testified that Plaintiff's prior work as a janitor required medium exertion and had an SVP level of three. (*Id.* at 383.) The VE testified that Plaintiff's prior work as both a supply clerk and laborer required heavy exertion and had an SVP level of four. (*Id.*)

Additionally, the VE opined on a series of hypothetical questions posed by the ALJ.  (*Id.* at 384–85.)  The VE testified that an individual with no exertional limitations, performing tasks with SVP levels of three or lower, and limited to only occasional dealing with the general public and coworkers would be able to perform Plaintiff's past work as a janitor.  (*Id.*)  The VE opined further that if the same individual were subject to the additional limitation of an inability to control his temper, the additional limitation would preclude that individual from performing any work.  (*Id.* at 385.)

On May 26, 2005, the ALJ issued a second decision reflecting his findings that Plaintiff was not disabled within the meaning of the Social Security Act because he retained the RFC to perform his past work as a janitor.  (*Id.* at 290–300.)  In reaching his conclusion, the ALJ first found that Plaintiff had not engaged in substantial gainful activity since March 22, 2003.  (*Id.*)  The ALJ next determined that Plaintiff's diabetes did not limit his ability to perform work-related activities and therefore was not a severe impairment.  (*Id.* at 294–95.)  The ALJ found that Plaintiff's anxiety-related disorder, PTSD, was a medically determinable, severe impairment.  (*Id.* at 294.)  Despite its severity, the ALJ determined that the impairment was not sufficiently severe to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations Number 4.  (*Id.*)  Additionally, the ALJ determined that Plaintiff "overstate[d] his symptoms and limitations and therefore [was] not credible."  (*Id.* at 295.)

Based on the evidence presented, the ALJ concluded that Plaintiff had the RFC "to perform work at all exertional levels, to perform work that does not involve complex tasks (SVP of [three] or less), and does not require more than occasional contact with the general public and

coworkers." (*Id.* at 298.)  In accord with this RFC, the ALJ determined that Plaintiff could

perform his past relevant work as a janitor, and therefore was not disabled.  (*Id.* at 298–99.)

The Appeals Council declined to review the ALJ's decision, making it the final

administrative decision for the purposes of judicial review.  (*Id.* at 288.)  On August 24, 2005,

Plaintiff filed a complaint in this court challenging the Commissioner's denial of disability benefits.

(Compl. [filed Aug. 24, 2005].)  On January 12, 2006, Plaintiff filed his opening brief.  (Pl.'s

Opening Br. [filed Jan. 12, 2006] [hereinafter "Pl.'s Br."].)

## ANALYSIS

### 1.    *Standard of Review*

Section 405(g) of the Social Security Act establishes the scope of this court's review of

the Commissioner's denial of disability insurance benefits.  *See* 42 U.S.C. § 1383(c)(3) (2006)

(incorporating review provisions of 42 U.S.C. § 405[g]).  Section 405(g) provides, in relevant

part, that:

> [t]he findings of the Commissioner of Social Security as to any fact,
> if supported by substantial evidence, shall be conclusive, and where
> a claim has been denied by the Commissioner of Social Security or
> a decision is rendered under subsection (b) of this section which is
> adverse to an individual who was a party to the hearing before the
> Commissioner of Social Security, because of failure of the claimant
> or such individual to submit proof in conformity with any regulation
> prescribed under subsection (a) of this section, the court shall
> review only the question of conformity with such regulations and
> the validity of such regulations.

42 U.S.C. § 405(g) (2006).  Thus, this court's review is limited to determining whether the record

as a whole contains substantial evidence supporting the Commissioner's decision.  *See id.*;

*Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992).  The

court must uphold the Commissioner's decision if it is supported by substantial evidence.  *See*

*Dollar v. Bowen*, 821 F.2d 530, 532 (10th Cir. 1987).  This court cannot reweigh the evidence

nor substitute its judgment for that of the ALJ.  *Jordan v. Heckler*, 835 F.2d 1314, 1316

(10th Cir. 1987).  That does not mean, however, that my review is merely cursory.  To find that

the ALJ's decision is supported by substantial evidence, the record must include sufficient relevant

evidence that a reasonable person might deem adequate to support the ultimate conclusion.  *Frey*

*v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).  A decision is not based on substantial evidence if

it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence

supporting it.  *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985).  The ALJ's decision is also

subject to reversal for application of the wrong legal standard.  *Bernal v. Bowen*, 851 F.2d 297,

299 (10th Cir. 1988); *Frey*, 816 F.2d at 512.

**2.      *Evaluation of Disability***

The qualifications for disability insurance benefits under the Social Security Act are that

the claimant meets the insured status requirements, is less than sixty-five years of age, and is

under a "disability."  *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991).  The Social Security

Act defines a disability as an inability "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than

twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2006).  In proving his disability, a claimant must

make a *prima facie* showing that he is unable to return to the prior work he has performed.

-12-

*Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).  Once the claimant meets that burden, the Commissioner must show that the claimant can do other work activities and that the national economy provides a significant number of jobs which the claimant could perform.  *Frey*, 816 F.2d at 512.

The Commissioner has established a five-step process to determine whether a claimant qualifies for disability-insurance benefits.  *See* 20 C.F.R. § 404.1520 (2006); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987) (describing five-step analysis).  A claimant may be declared disabled or not disabled at any step; and, upon such a determination, the subsequent steps may be disregarded.  *See* 20 C.F.R. § 404.1520(a) (2006); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  First, the claimant must demonstrate that he is not currently involved in any substantial gainful activity.  20 C.F.R. § 404.1520(b) (2006).  Second, the claimant must show a medically severe impairment (or combination of impairments) which limits his physical or mental ability to do basic work activities.  *Id.* § 404.1520(c).  At the third step, if the impairment matches or is equivalent to established listings, then the claimant is judged conclusively disabled.  *Id.* § 404.1520(d) (2006).  If the claimant's impairments are not equivalent to the listings, the analysis proceeds to the fourth step.  At this stage, the claimant must show that the impairment prevents him from performing work he has performed in the past.  *See Williams*, 844 F.2d at 751 (citations omitted).  If the claimant is able to perform his previous work, he is not disabled.  20 C.F.R. § 404.1520(e) (2006); *Williams*, 844 F.2d at 751.  The fifth step requires the Commissioner to demonstrate that: (1) the claimant has the RFC to perform other work based on the claimant's

age, education, past work experience; and (2) there is availability of that type of work in the

national economy.  *See*  20 C.F.R. § 404.1520(f) (2006); *Williams*, 844 F.2d at 751.

**3.       *Disability Determination***

Plaintiff sets forth five arguments in support of his contention that the ALJ's decision is

erroneous.  Plaintiff argues the ALJ erred in: (1) evaluating Plaintiff's credibility; (2) evaluating

the medical evidence; (3) failing to find that Plaintiff's impairment meets the listing requirements;

(4) assessing Plaintiff's mental residual functional capacity ("MRFC"); and (5) failing to develop

the record.  (Pl.'s Br. at 8–14.)  I address each argument below.[6]

**a.       *Plaintiff's Credibility***

Plaintiff indirectly argues that the ALJ erred in finding him less than fully credible.  (*Id.* at

13–14.)  Specifically, Plaintiff "incorporates the argument and references to the record found in

paragraph A" of his opening brief in his previous administrative appeal before this court, which

"includes errors in law in the ALJ's credibility determination."[7]  (*Id.* at 14.)  In Plaintiff's opening

brief in his prior appeal before this court, Plaintiff argued that the ALJ erred in assessing Plaintiff's

credibility by: (1) relying too heavily upon Plaintiff's symptoms after retirement; (2) failing to take

into account Plaintiff's attempts to obtain relief from his symptoms; and (3) failing to consider

---

[6]In the interest of clarity, I analyze Plaintiff's arguments out of the sequential order in
which he presents them in his brief.

[7]This court has obtained the records of the previous appeal and notes that Plaintiff's
opening brief contains more than one paragraph A.  Plaintiff's argument regarding the ALJ's
credibility determination appears at page 10.  (*See* Pl.'s Opening Br. at 10, Civ. Action No.
04–AP–01528 [filed Nov. 10, 2004].)

Plaintiff's efforts to work despite his impairment.  (Pl.'s Opening Br. at 10, Civ. Action No.

04–AP–01528 [filed Nov. 10, 2004].)  This court considers Plaintiff's argument despite its

unusual presentation.

"'Credibility is the province of the ALJ.'"  *Musgrave v. Sullivan*, 966 F.2d 1371, 1376

(10th Cir. 1992) (quoting *Brown v. Bowen*, 801 F.2d 361, 362–63 [10th Cir. 1986]).  Indeed,

credibility determinations made by an ALJ are generally considered binding upon review.  *Gossett*

*v. Bowen*, 962 F.2d 802, 807 (10th Cir. 1988).  Such determinations "should not be upset if

supported by substantial evidence."  *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001).  In

assessing credibility, the ALJ may consider several factors, including subjective measures of

credibility and the consistency of the nonmedical evidence with the medical.  *Fessler v. Apfel*, 11

F. Supp. 2d 1244, 1251 (D. Colo. 1998); *see also Eggleston v. Bowen*, 851 F.2d 1244, 1247

(10th Cir. 1988) (holding an ALJ may question credibility based on inconsistencies between the

plaintiff's testimony and other record evidence).

Here, as the ALJ noted, Plaintiff testified at the January 21, 2004 hearing that he: (1) had

problems with his memory; (2) had no friends; and (3) did not sleep well, even with the aid of

medication.  (Admin. R. at 275–76, 281–82, 283.)  In contrast, Dr. Rook found that Plaintiff

showed no signed of difficulty with orientation, memory, or concentration.  (*Id.* at 266.)

Similarly, Dr. Jones opined that Plaintiff's concentration and memory were "very good."  (*Id.* at

216.)  Further, Plaintiff reported: (1) to Dr. Jones that he received regular visits from a friend,

with whom he shared war stories; and (2) to Drs. Rook and Jones that he slept well with

medications.  (*Id.* at 217, 218, 265.)  Consequently, I find that the ALJ was supported by

substantial evidence and did not err in deeming Plaintiff less than fully credible.

### b.      Plaintiff's Physicians' Opinions and Medical Evidence

Plaintiff asserts that the ALJ improperly analyzed the medical evidence in arriving at his

decision.  (Pl.'s Br. at 8–12.)  Plaintiff argues the ALJ failed to consider: (1) Dr. Young's opinion

as controlling; (2) the Department's October 2004 determination that Plaintiff was one hundred

percent disabled; and (3) the state agency physician's opinions.  (Pl.'s Br. at 8–12.)  At the outset,

I note that Plaintiff implicitly asks this court to reweigh the evidence and substitute its judgment

for that of the ALJ, neither of which it may do.  *See Jordan*, 835 F.2d at 1316.  I underscore that

this court's exclusive task is to determine whether the ALJ's decision was supported by

substantial evidence.  *Dollar*, 821 F.2d at 532.  I find that the ALJ's decision was adequately

supported, and discuss Plaintiff's arguments below.

### i.      Dr. Young's Opinion

The ALJ accorded Dr. Young's opinion "very little weight."  (Admin. R. at 298.)  Plaintiff

argues that the ALJ erred in so doing, because, as a treating physician, Dr. Young's opinion

should have received controlling weight.  (Pl.'s Br. at 10–12.)  An ALJ is required to give

controlling weight to a treating physician's well-supported opinion, so long as it is not

inconsistent with other substantial evidence in the record.  *See* 20 C.F.R. § 404.1527(d)(2);

*Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004).  Moreover, an ALJ must consider a

series of factors in determining the amount of weight to give any medical opinion.[8]  *See* 20 C.F.R.

§§ 404.1527(d)(2)–(6); *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288,

290 (10th Cir. 1995).  Upon consideration of the factors, an ALJ must state "good reasons" for

the weight he ultimately assigns the opinion.  *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th

Cir. 2003) (internal citation and quotation marks omitted).  Here, the ALJ discounted Dr.

Young's opinion because it "is unsupported by his own findings or by the other evidence in the

file and is inconsistent with the record as a whole."  (Admin. R. at 298.)  I find the ALJ's reason

was adequate and his decision was supported by substantial evidence.

Dr. Young's opinion is inconsistent with the opinions of Drs. Rook and Jones as well as

with Plaintiff's own testimony.  In September 2003, Dr. Young noted that Plaintiff had remained

at home since his March 2003 retirement because he could not be in public situations due to his

---

[8]Those factors are:
(1) the length of the treatment relationship and the frequency of examination; (2)
the nature and extent of the treatment relationship, including the treatment
provided and the kind of examination or testing performed; (3) the degree to which
the physician's opinion is supported by relevant evidence; (4) consistency between
the opinion and the record as a whole; (5) whether or not the physician is a
specialist in the area upon which an opinion is rendered; and (6) other factors
brought to the ALJ's attention which tend to support or contradict the opinion.
*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); *see* 20 C.F.R. §§ 404.1527, 416.927
(2006).  Plaintiff argues briefly that the ALJ failed to consider factors one, two and five listed
above. (Pl.'s Br. at 12.)  I disagree.  "[A]n ALJ is not required to discuss every piece of
evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).  Here, although the ALJ
may not have addressed each factor in his opinion, the record contains clear indications that he
considered the factors in question.  To wit, the ALJ refers to Dr. Young as Plaintiff's "treating
psychiatrist," indicating specialization and repeat treatment.  (Admin. R. at 296.)  Further, the
ALJ expressly refers to medical evidence in the record spanning several years of treatment and to
the bases upon which Dr. Young based his opinions.  (*Id.* at 296, 298.)  Thus, I find that the ALJ
did not err in his consideration of the factors.

panic attacks.  (*Id.* at 239.)  In stark contrast, in May 2003, Plaintiff reported to Dr. Rook that he: (1) intended to travel to Texas to visit his family; (2) ate out at restaurants twice a week; and (3) did much of the grocery shopping for the household.  (*Id.* at 265–66.)  Further, at the January 21, 2004 hearing,  Plaintiff testified that he had taken his grandson shopping at a mall during the previous Christmas holiday.  (*Id.* at 280.)

Additionally, the ALJ rejected Dr. Young's GAF assessment of Plaintiff, due to the doctor's failure to "support his opinion with objective medical evidence or even with observations of [Plaintiff's] behavior during the appointment."  (*Id.* at 296.)  A treating physician's opinion may be disregarded if the conclusions therein are not supported by specific findings.  *See Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994).  The record does not reflect that Dr. Young referred to or relied upon objective evidence or specific findings in making his GAF assessment.  (*Id.* at 82, 91.)

Finally, the determination of whether Plaintiff is disabled is wholly reserved to the Commissioner.  20 C.F.R. § 404.1527(e) (2006); *Castellano*, 26 F.3d at 1029.  Thus, the ALJ properly disregarded Dr. Young's opinion that Plaintiff is "not employable" and "totally and permanently disabled."  (Admin. R. at 240, 354–56.)  Based on the foregoing, I find that the ALJ's decision to discount Dr. Young's opinions was supported by substantial evidence.

### ii.    *Department Disability Rating*

Plaintiff argues that the ALJ erred in disregarding the Department's October 2004 disability rating, in which it found that Plaintiff was one hundred percent disabled.  (Pl.'s Br. at 9.) I disagree.  First, the determination of whether Plaintiff is disabled is wholly reserved to the

Commissioner.  *Castellano*, 26 F.3d at 1029.  Nonetheless, "although findings by other agencies are not binding on the [Commissioner], they are entitled to weight and must be considered." *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993) (citations and internal quotation marks omitted).

Here, the ALJ analyzed the Department's December 2001 and September 2003 disability ratings of seventy percent and disregarded the opinions as inconsistent with the medical evidence in the record.  (Admin. R. at 298.)  Most notably, the ALJ emphasized that the VA's own examiner found Plaintiff capable of employment.  (*Id.* at 266, 298.)  Accordingly, the ALJ satisfied his burden to consider the non-binding opinions.

Plaintiff argues briefly that the ALJ erred in failing to consider the Department's October 2004 finding that Plaintiff was one hundred percent disabled.  (Pl.'s Br. at 9.)  I underscore that the Department's one hundred percent rating was explicitly based on its decision to accord more weight to Dr. Young's medical opinions than the Department physicians' opinions.  (Admin. R. at 352–53.)  Here, the ALJ discounted the very opinions that serve as the basis of the Department's revised decision.  (*Id.* at 298.)  Accordingly, I find that the ALJ's failure to consider the Department's non-binding October 2004 disability rating is harmless error.  *See Glass v. Shalala*, 43 F.3d 1392, 1397 (10th Cir. 1994) (holding error harmless where evidence issue would not have unfairly affected the ultimate result).

### iii.    *State Agency Physician's Opinion*

Plaintiff argues that the ALJ erred in failing to weigh the state agency physician's mental functional capacity assessment.  (Pl.'s Br. at 10.)  Plaintiff does not cite to the record or the ALJ's

opinion to substantiate his unavailing argument. (*Id.*) "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton*, 79 F.3d at 1009–10. Here, the ALJ's opinion expressly indicates that he has examined the entire record in arriving at his decision. (Admin. R. at 293.) Moreover, the ALJ assessed Plaintiff with an identical MRFC as the state agency physician's mental functional capacity assessment. (*Id.* at 237, 298.) Niether the record nor the ALJ's opinion suggests that the ALJ failed to give the state agency's opinion due consideration. Accordingly, I find that the ALJ did not err by failing to evaluate the evidence in the record.

### c. The ALJ's Step Three Determination — Listing 12.06

At step three, the ALJ determined that Plaintiff's impairment was not sufficiently severe to meet or medically equal the requirements of Listing 12.06, which relates to anxiety-related disorders. (Admin. R. at 294.) To satisfy Listing 12.06, an individual must meet the requirements under 12.06A and, in addition, the requirements under either 12.06B or 12.06C. 20 C.F.R. § 404 Subpt. P app. 1 § 12.06 (2006). 12.06A requires medically documented findings of "[r]ecurrent and intrusive recollections of a traumatic experience, which are a source of marked distress." *Id.* § 12.06A. 12.06B requires that those recollections result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *Id.* § 12.06B. Alternatively, 12.06C requires that those recollections result in a complete inability to function independently

outside the area of one's home.  *Id.* § 12.06C.  Here, the ALJ found that Plaintiff's impairment

was not sufficiently severe to satisfy the criteria under 12.06B or 12.06C.  (Admin. R. at 294.)

In holding that the Plaintiff's impairment does not satisfy the 12.06B requirements, the

ALJ found that Plaintiff had no episodes of decompensation.[9]  (*Id.* at 298.)  Plaintiff argues that

the ALJ erred in this determination, because the state agency physician found that Plaintiff had

"one or two" of such episodes.  (Pl.'s Br. at 10.)  Indeed, the state agency physician did so find.

(Admin. R. at 231.)  Importantly, the state agency physician's opinion to which Plaintiff refers

clearly states that three or more episodes of decompensation are required to satisfy the functional

criterion under Listing 12.06.  (*Id.*)  Accordingly, I find this discrepancy is harmless error on the

part of the ALJ in assessing the severity of Plaintiff's impairment.  *See Glass*, 43 F.3d at 1397.

Moreover, for Plaintiff "to show that his impairment matches a listing, it must meet all of

the specified medical criteria.  An impairment that manifests only some of those criteria, no matter

how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  Here, the state

agency physician concluded that Plaintiff did not suffer any marked degrees of limitation, as

required under 12.06B.  (Admin. R. at 231.)  Thus, even if Plaintiff had satisfied the

decompensation component, he still could not have satisfied the listing requirements.  *See* 20

C.F.R. § 404 Subpt. P app. 1 § 12.06A (2006).  Consequently, I find that the ALJ was supported

by substantial evidence in making his determination at step three.

---

[9]Plaintiff does not argue, and the evidence does not suggest, that he meets the
requirements of 12.06C.  (Pl.'s Br.)

### d.    Plaintiff's MRFC

Plaintiff argues that the ALJ erred in assessing his MRFC.  (Pl.'s Br. at 13–14.)

Specifically, Plaintiff argues that the ALJ applied the wrong standard and "placed undue weight"

on Dr. Rook's opinion that Plaintiff is capable of employment.  (*Id.*)  First, I remind Plaintiff that

this court cannot reweigh the evidence or substitute its judgment for that of the Commissioner.

*Miller v. Chater*, 99 F.3d 972, 978 (10th Cir. 1996).  I emphasize that ALJs retain the exclusive

final responsibility to decide a claimant's MRFC.  *See* 20 C.F.R. §§ 404.1527, 404.1545(b),

404.1546(c) (2006).  Further, to the extent Plaintiff argues that the ALJ failed to consider

Plaintiff's ability to obtain and maintain work, Plaintiff's argument is disingenuous.  I underscore

the ALJ's express statement that his MRFC determination was "an assessment of [Plaintiff's]

ability to do sustained work related physical and mental activities in a work setting on a regular

and continuing basis."  (Admin. R. at 295.)

Additionally, Plaintiff argues that the ALJ erred by failing to consider "the specific mental

limitation imposed by both the state agency physician [] and by Dr. Young."  (Pl.'s Br. at 13.)

Plaintiff's argument is as unconvincing as it is unspecific.  As discussed above, the ALJ properly

discounted Dr. Young's opinions as inconsistent with the record.  (*See Analysis* § 3bi, *supra*.)

Therefore, the ALJ properly ignored any limitations imposed by Dr. Young.  In addition, as

discussed above, nothing in the record suggests that the ALJ failed to consider the state agency

physician's opinion in making his determination.  (*See Analysis* § 3biii, *supra*.)  Accordingly, I

find that the ALJ did not err in determining Plaintiff's MRFC.

### e.      The ALJ's Step Four Determination

Plaintiff argues that the ALJ erred in his determination at step four by relying the VE's responses to improper hypothetical questions and by failing to develop the record regarding Plaintiff's past relevant work.  (Pl.'s Br. at 14.)  I discuss each point in turn.

### i.      The ALJ's Hypothetical Questions

Plaintiff argues that the ALJ's hypothetical questions did not contain all of Plaintiff's impairments, thereby tainting the VE's responses thereto.  (*Id.*)  Rather than identifying the precise impairments, Plaintiff argues that the hypothetical questions did not include "specific psychological limitations, as set forth above."  (*Id.*)  Given that Plaintiff does not offer an internal citation to direct the court to the psychological limitations ostensibly set forth, it is markedly difficult to evaluate Plaintiff's argument.  (*Id.*)  Nonetheless, in a section pertaining to a different argument, discussed *supra* at *Analysis* § 3d, Plaintiff refers to the "specific mental limitation[s] imposed by both the [s]tate agency physician [] and by Dr. Young."  (*Id.* at 13.)  The foregoing is Plaintiff's only reference to "specific" limitations in his brief.  (*Id.*, *passim.*)  Given no guidance to the contrary, I analyze Plaintiff's argument to the extent that the state agency's and Dr. Young's opinions contain the "specific psychological limitations" Plaintiff purports to have set forth.

It is, of course, true that  "'[t]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision.'"  *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (quoting *Ekeland v. Bowen*, 899 F.2d 719, 724 [8th Cir. 1990]).  In keeping with this principle, the Tenth Circuit has expressly stated a rule that an ALJ's hypothetical inquiries "must include all

(and only) those impairments borne out by the evidentiary record." *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995). Here, the ALJ has satisfied this rule.

As noted above, the state agency physician found that Plaintiff: (1) was limited to performing work requiring up to three months to learn; and (2) could not work closely with the general public or supervisors. (Admin. R. at 237.) The ALJ's first hypothetical question involved an individual who was limited: (1) to performing work with an "SVP of three or less;"[10] and (2) "only occasional dealing with the general public and only occasional dealing with coworkers." (*Id.* at 384.) It is therefore extremely difficult to ascertain how the ALJ failed to include the limitation borne out by evidence in the record in the form of the state agency physician's opinion. Moreover, as discussed *supra* at *Analysis* § 3bi, the ALJ properly discounted Dr. Young's opinion. Accordingly, the ALJ properly avoided discussing the impairments Dr. Young assessed Plaintiff to have. Based on the foregoing, I find that the ALJ's hypothetical questions properly included the specific limitations borne out by evidence in the record, and the ALJ properly relied on the VE's testimony in response thereto.

### ii. The ALJ's Consideration of Plaintiff's Past Relevant Work

Before addressing the substance of Plaintiff's second argument, I note that an ALJ's determination at step four comprises three phases. In the first phase, the ALJ must evaluate the plaintiff's RFC and MRFC. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). In the second phase, the ALJ must determine the physical and mental demands of the plaintiff's past

---

[10]An SVP level of three means that the lapsed time required to learn the job is over one month and up to and including three months. *Dikeman*, 245 F.3d at 1186 n.2.

relevant work. *Id.* Finally, in the third phase, the ALJ must determine whether the plaintiff has

the ability to meet the job demands found in phase two despite the plaintiff's limitations found in

phase one. *Id.* Plaintiff does not contest the ALJ's findings at the first phase, but argues that the

ALJ erred at the second phase by failing to "develop the record as to the mental demands of

Plaintiff's [past relevant work]." (Pl.'s Br. at 14.) Plaintiff is remarkably unspecific in his

argument, and does not identify any particular findings the ALJ should have made. (*Id.*)

The Tenth Circuit has specifically held that at the second phase, "the ALJ must obtain

adequate factual information about those work demands which have a bearing on the medically

established limitations. " *Winfrey*, 92 F.3d at 1024 (citation and internal quotation marks omitted).

Additionally, the Tenth Circuit has held that an ALJ must "obtain a precise description of the

particular job duties which are likely to produce tension and anxiety, e.g., speed, precision,

complexity of tasks, independent judgments, working with other people, etc., in order to

determine [whether] the [plaintiff's] mental impairment is compatible with the performance of

such work." *Id.* Here, the ALJ has satisfied this burden.

In the instant case, the ALJ requested and obtained information regarding the exertional

and SVP levels required to perform Plaintiff's previous work as a janitor. (Admin. R. at 383.)

Further, the ALJ specifically inquired whether an individual limited to work requiring an SVP

level of three or lower and only occasional dealing with the general public and coworkers would

be able to perform Plaintiff's past work as a janitor. (*Id.* at 384–85.) The VE opined that such an

individual would indeed be able to perform the job, and the ALJ expressly accepted the VE's

testimony. (*Id.* at 298, 385.) Given the ALJ's inquiries, it is difficult indeed to ascertain how

*Winfrey*, a case in which "the ALJ made no inquiry into, or any findings specifying, the mental demands of [the] plaintiff's past relevant work," applies to the instant matter. 92 F.3d at 1024. Plaintiff makes no argument to aid the court in this process. Consequently, I find that the ALJ did not err at step four in making his determination.

**4.     Conclusion**

Based on the foregoing, it is therefore ORDERED:

1. The Commissioner's decision is AFFIRMED.

2. The hearing scheduled for Friday, August 4, 2006, is VACATED.


Dated this 2nd day of August, 2006.

BY THE COURT:


s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge